STEPHEN J.ERIGERO (SBN 11562)
TIMOTHY J. LEPORE (SBN 13908)
LAEL D. ANDARA (California SBN 215416)
MARIE E. SOBIESKI (California SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
3753 Howard Hughes Pkwy., Suite 200
Las Vegas, NV 89169
Telephone:  (702) 954-8300
Facsimile:  (650) 780-1701
Email:  stephen.erigero@rmkb.com
    timothy.lepore@rmkb.com
    lael.andara@rmkb.com
    marie.sobieski@rmkb.com

Attorneys for Plaintiffs
EQUALIA, LLC and HOVERBOARD
TECHNOLOGIES CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EQUALIA, LLC, a California limited liability company, and HOVERBOARD TECHNOLOGIES CORPORATION, a California corporation,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>KUSHGO LLC dba HALO BOARD, a California limited liability company; HALO BOARD LLC, an Oregon limited liability company; ARTHUR ANDREASYAN, an individual; and SHENZHEN WINDGOO INTELLIGENT TECHNOLOGY CO. LTD., a foreign company,<br><br>　　　　　　　Defendants. | CASE NO. 2:16-cv-02851-RFB-CWH<br><br>**DECLARATION OF ROBERT BIGLER IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, SEIZURE ORDER, AND PRELIMINARY INJUNCTION** |

I, Robert Bigler, declare:

1. I, along with my wife, Punita Bigler, founded Equalia LLC and Hoverboard Technologies Corporation (collectively, "Equalia"), which are based in Mountain View, California. I have personal knowledge of the facts stated herein and am familiar with the documents referred to as part of this declaration.

2. If called as a witness, I would competently testify to the following facts, all of which are within my own personal knowledge.

**MY HOVERBOARD DESIGN**

3. Beginning in approximatley December of 2012, I began designing a singled-wheeled hoverboard to be sold to consumers as a fun and functional personal mobility vehicle. The device generally resembles a skateboard with one narrow central wheel passing through the center of the board. I prepared the following design:



Fig. 1   Fig. 2   Fig. 3   Fig. 4

- 2 -

DECLARATION OF ROBERT BIGLER IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE, AND PRELIMINARY INJUNCTION

When a rider leans forward, sensors in the board trigger the board's electric motor to rotate the wheel in responsive, propelling the rider forward. When the rider leans back, the device slows, and if leaning continues, the wheel will begin rotating in the opposite direction. The hoverboard senses the orientation of the rider, as well as the distance of the bottom of the board from the ground, to dictate speed, direction, and balance.

4. On **April 25, 2016**, I filed for a design patent application directed the unique hoverboard design. This design parent application issued as United States Design Patent No. D768,252 on **October 4, 2016**, and is titled PITCH-PROPELLED VEHICLE ("Equalia Patent"). Figs. 1-4 above are claimed in that patent. Equalia's hoverboard embodies the ornamental design elements depicted in the Equalia Patent. A true and correct copy of my design patent is attached hereto as **Exhibit A**.

5. On **October 21, 2013**, Equalia filed a utility patent application to cover novel functional features of its hoverboard. The application granted on **December 15, 2015**, as United States Patent No. 9,211,470, and is titled PITCH-PROPELLED VEHICLE ("Equalia Utility Patent"). Equalia's hoverboard embodies the functional elements claimed in the Equalia Utility Patent. A true and correct copy of my utility patent is attached hereto as **Exhibit B**.

6. Equalia's hoverboard products have taken time, effort, and expense to develop and fine-tune. To date, Equalia has invested over $3,000,000 in research and development, and hopes to begin generating revenue in March of 2017.

7. The company has been widely advertising, marketing, and soliciting sales of the hoverboard since at least September of 2015, when we launched a month-long Kickstarter campaign. Equalia has further promoted its hoverboard through its website at www.hoverboard.com, in the media, and at trade shows, including the 2016 Computer Electronics Show, which was held from January 6 through 9, 2016. Equalia is a recognized brand in the electric mobility device industry and has already marketed and taken pre-orders for its products at these events and trade shows.

**HOVERBOARD PIRACY**

8. I frequently find examples of Equalia hoverboard knockoffs advertised online, but there is little I can do to stop them, as they are largely produced by overseas manufacturers with no known presence in the United States. It is only when the infringing products are imported into the United States that Equalia has taken steps to stop the infringing activity. One need only browse the Chinese e-commerce site Alibaba.com to find a number of such copycat products for sale. These copycats even use Equalia's own images to promote their products; for example, one seller uses a picture of my daughter holding an Equalia hoverboard to promote their imitation. A true and correct copy of a page of exemplar copycats for sale on Alibaba.com is attached hereto as **Exhibit C**.

9. I first learned of Defendants' activity in late 2015, through friends seeing it on the internet and bringing it to my attention.

10. I learned Defendants would be attending the Consumer Technology Association's 2017 Computer Electronics Show ("CES") on or about November of 2016.

11. I contacted my attorneys on the issue on or about November 17, 2016.

**COMMUNICATIONS WITH DEFENDANTS**

12. On **December 1, 2015**, I received an email from Daisy Ding of Windgoo's International Sales department. Ms. Ding was advertising her company's two-wheeled hoverboards. Because I was interested in exploring manufacturing opportunities abroad, I asked Ms. Ding if her company would be interested in manufacturing Equalia's hoverboard. To my surprise, Ms. Ding responded that such manufacturing was already underway, and that Windgoo had "start[ed] to produce your style hoverboard" already. Further, Ms. Ding stated that Windgoo "ha[s] a warehouse in LA, this products will also provide there." At that time I did not understand that Windgoo was selling or planning to sell our style hoverboard in the United States. I thought their main business was in the common two-wheeled versions. Attached hereto as **Exhibit D** is a true and correct copy of my email exchange with Ms. Ding.

13. I followed up with Ms. Ding in hopes of determining if Windgoo was truly manufacturing copies of my hoverboard, or merely acting as an intermediary. Ms. Ding was adamant that Windgoo was the manufacturer of copycat boards. Ms. Ding further told me I should not be concerned about patent rights in the United States: "For the patent, we make the mould by ourself, it is not the same with others. Pls don't worry about this point." *See* Exhibit D.

14. Defendants are calling their infringing product by the model name "Halo Board" on their website located at www.haloboard.com. In addition, I have seen the identical board sold under different names, including "Innoviboard." It is my understanding and belief that the Defendants sell their infringing products directly to end-user customers online, as well as to third-party resellers through wholesale distribution channels. A true and correct copy of an advertisement for the hoverboard being sold under the name "Innoviboard" is attached hereto as **Exhibit E**. A true and correct copy of selected pages of the Halo Board website located at www.haloboard.com is attached hereto as **Exhibit F**.

15. I have observed that the Defendants openly advertise on the internet and run specials, including through social media such as Twitter and YouTube. The bottom of the www.haloboard.com website shows a "sale ends" countdown clock, which counts down continuously. To my review of their website advertisements Defendants' infringing product sells from $697 to $997. Defendants also market numerous other products, such as two-wheeled self-balancing scooters, which are also sold through their www.haloboard.com website.

**CES**

16. The next CES will be held in Las Vegas, Nevada, from January 5th through 8th in 2017. According to the information published on the CES website, each year there are more than 165,000 attendees who travel from over 150 different countries to participate. CES is known as a top venue for marketing new products to wholesalers and retailers, and for forging relationships to market and promote their new products. Equalia has used CES as a venue to meet new partners for manufacturing, as well as to forge new sales and marketing relationships.

17. Equalia plans to launch the "GeoBlade" hoverboard model at CES, and anticipates pricing this board starting at $1,495. The GeoBlade utilizes alternative build materials to maintain the product's quality while lowering its price, and is intended to compete with the much lower price of Defendants' infringing product.

18. On my understanding and belief, Defendants' booth at CES is almost directly across from Equalia and will have a negative material impact on Equalia's sales, both to individuals and to wholesalers and retailers.

I declare under penalty of perjury that the foregoing is true and correct. Executed this December 28, 2016 in Mountain View, California.

_____
ROBERT BIGLER

- 6 -

DECLARATION OF ROBERT BIGLER IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER, SEIZURE, AND PRELIMINARY INJUNCTION