STEPHEN J. ERIGERO (SBN 11562)
TIMOTHY J. LEPORE (SBN 13908)
LAEL D. ANDARA (California SBN 215416)
MARIE E. SOBIESKI (California SBN 278008)
ROPERS, MAJESKI, KOHN & BENTLEY
3753 Howard Hughes Pkwy., Suite 200
Las Vegas, NV 89169
Telephone:    (702) 954-8300
Facsimile:    (650) 780-1701
Email:        stephen.erigero@rmkb.com
              timothy.lepore@rmkb.com
              lael.andara@rmkb.com
              marie.sobieski@rmkb.com

Attorneys for Plaintiffs
EQUALIA, LLC and HOVERBOARD
TECHNOLOGIES CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EQUALIA, LLC, a California limited liability company, and HOVERBOARD TECHNOLOGIES CORPORATION, a California corporation,<br><br>              Plaintiffs,<br><br>v.<br><br>KUSHGO LLC dba HALO BOARD, a California limited liability company; HALO BOARD LLC, an Oregon limited liability company; ARTHUR ANDREASYAN, an individual; and SHENZHEN WINDGOO INTELLIGENT TECHNOLOGY CO. LTD., a foreign company,<br><br>              Defendants. | CASE NO. 2:16-cv-02851-RFB-CWH<br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to Federal Rules of Civil Procedure 64 and 65, the Patent Act, 35 U.S.C. §283, and Local Rule of Civil Practice 7-4, Plaintiffs Equalia LLC and Hoverboard Technologies Corporation (collectively "Equalia" or "Plaintiff") respectfully move the Court for a preliminary injunction against Defendants Kushgo LLC, dba Halo Board, Halo Board LLC, Arthur

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Andreasyan, and Shenzhen Windgoo Intelligent Technology Co. Ltd. (collectively, "Defendants"). This motion is based upon the pleadings and the records on file herein, the Expert Report of Robert Bigler in Support of Plaintiff's Motion for Preliminary Injunction ("*Bigler Report*"), and the oral argument of counsel, if any. Absent such relief, Equalia is certain to suffer irreparable damage from Defendants' infringement of its valuable design patent. For the reasons stated herein, Equalia requests relief from the court consisting of a Preliminary Injunction enjoining Defendants from infringing United States Design Patent No. D768,252 by using, selling, and offering to sell, directly or indirectly, their infringing product.

Defendants were temporarily restrained from selling their accused products online and at the 2017 CES as of the Court's Order on January 4, 2016, following three days of hearings. The Court now prepares for an additional hearing on January 13, 2017, to determine if a preliminary injunction should issue.

## I.      **INTRODUCTION**

This is a dispute as to Defendants wholesale reproduction and trading off of Plaintiff Equalia's innovative design as protected by United States Design Patent No. D768,252, duly issued by the United States Patent and Trademark Office ("USPTO") on October 4, 2016 (the "Equalia Patent"). Plaintiff Equalia has and will suffer continued irreparable harm if Defendants are allowed to continue their infringement of Equalia's design patent through marketing and sales of the infringing product.

At its most basic, Equalia's patent design resembles a hover board with one narrow central wheel passing through the center of the board. Equalia began developing the design beginning in approximately December of 2012, and has been widely advertising, marketing, and soliciting sales of the Equalia hoverboard since at least September of 2015. Dckt. 10-1, ¶7. During this process, Equalia performed extensive testing and refined the hoverboard's look and feel to craft a visually appealing and fun to ride product which is distinct in the marketplace. *Expert Report of Robert Bigler*, ("Bigler Report"), pgs. 4-6. Robert Biger, CEO of Equalia, sought protection for these unique ornamental features by filing a design patent application on April 25, 2016, which issued as the Equalia Patent on October 4, 2016. Dckt. 10-1, ¶4 and Ex. A. Equalia has promoted

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

its hoverboard through its website, in the media, and at trade shows, including CES in both 2016 and 2017. *Id.*

Defendants market a product they call the "Halo Board" (the "accused product") directly to end-user customers online, as well as to third-party resellers through wholesale distribution channels. This accused product version 1 started out identical to the Equalia Patent, based on its trademark filing of April 28, 2016 and its later iterations, version 2 and version 3 remain substantially similar, so that the average consumer would be confused as to the origin of the products. Defendants' infringing and inferior product therefore jeopardizes and directly harms Equalia's ability to compete in the marketplace.

## II.   STATEMENT OF FACTS

### A.   The Accused Product's Substantial Similarity to the Equalia Patent

Defendants launched the accused product in sometime between April and March of 2016. *See Bigler Report*, pg. 5. Defendants' original board, as now evidenced in consumer electronics articles and through Defendant Kushgo's trademark specimen, was identical to Equalia's protected design. *See* Dckt. 1, Ex. E. The prweb.com article, referenced in the May 17, 2016 tweet depicts



version 1, and is still hyperlinked in Halo Board's website. *Declaration of Lael D. Andara* ("Andara Decl."), Ex. A. No doubt concerned with the existence of the Equalia Patent,

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Defendants' have made minor design modifications resulting in versions 2 and 3. However, these changes are not enough to differentiate the products in the eyes of the average consumer or to avoid patent infringement through substantial similarity.



| '252 Patent | |
| Equalia Hoverboard Patent Embodiment | |
| Version 1 | |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

| | |
|---|---|
| Version 2 |  |
| Version 3 | |

*Bigler Report*, pg. 12.

### B.   Design Elements of the Equalia Patent

For ease of analysis, Equalia's expert references the Equalia Patent by design elements, without suggesting that the analysis should be done as a whole rather than a sum of parts.



| **TOP BOARD ELEMENTS** | **UNDER BOARD ELEMENTS** |
|---|---|
| A. Circular One Wheel Cover | F. Downward Speaker Openings |
| B. Wheel Bumpers | G. Slanted Inset Screw Holes |
| C. Grid Design | H. Inset Corner Bumpers |
| D. Curved Ends | I. Wheel Bumpers |

| TOP BOARD ELEMENTS | UNDER BOARD ELEMENTS |
|---|---|
| E. Curved Power Display | J. Middle Light Assemblies |
| | K. Sensor Bumpers |
| | L. Center Light at the End |

These elements are found in Mr. Bigler's report at pages 6-7, and are attached as Appendix II relating to the Defendants' cited prior art references.

"In determining whether a design is primarily functional or primarily ornamental the claimed design is viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 Fed. 2d. 1117, 1123 (Fed. Cir. 1993).

### III.  LEGAL ARGUMENT

#### A.  Equalia is Entitled to a Preliminary Injunction Against All Defendants

Rule 65 of the Federal Rules of Civil Procedure provides for the issuance of a preliminary injunction as a means of preventing harm to one or more of the parties before the court can fully adjudicate the claims in dispute. Adjudication of preliminary injunctions in patent infringement cases necessarily involves consideration of substantive issues regarding the patent involved.

In Nevada, "[a] preliminary injunction is proper where the moving party can demonstrate that it has a reasonable likelihood of success on the merits and that, absent a preliminary injunction, it will suffer irreparable harm for which compensatory damages would not suffice." *Excellence Cmty. Mgmt., LLC v. Gilmore*, 351 P.3d 720, 722 (Nev. 2015). The decision whether or not to grant a preliminary injunction is within the discretion of the district court. *Id.* at 722. Courts should also weigh the relative hardship to the parties and whether an injunction would

Ropers Majeski Kohn & Bentley
*A Professional Corporation*
Redwood City

serve the public interest. *Clark Cty. Sch. Dist. V. Buchanan*, 924 P.2d 716, 719 (Nev. 1996).

Equalia believes it has satisfied its burden of demonstrating that a preliminary injunction is warranted in this case. Not one of the four relevant factors – likelihood of success on the merits, irreparable harm, balance of equities, or public interest – is alone dispositive. *Id.* at 1451. Instead, "the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.*; *see also Amazon.com, Inc. v. BarnesandNoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). Here, all factors weigh heavily in favor of the court issuing preliminary injunction against Defendants from using, selling, and offering to sell their accused products.

### 1.  Equalia is Likely to Succeed on the Merits

Federal patent laws have long permitted those who invent designs for manufactured articles to patent their designs. *See* Patent Act of 1842, §3, 5 Stat. 543–544. Patent protection is available for a "new, original and ornamental design for an article of manufacture." 35 USC §171(a). A patentable design "gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form." *Gorham Co. v. White*, 14 Wall. 511, 525 (1872). A design patent is infringed if an ordinary observer would be deceived: "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance *is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other*." *Id*., at 528 (emphasis added). Actual deception is not required, which is an accurate reflection of the analysis in *Gorham. Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1000 (Fed. Cir. 2015) citing *Gorham* at 530 (crediting expert opinions "that ordinary purchasers would be likely to mistake the [accused] designs for the [patented design]").

A plaintiff in a patent infringement case demonstrates a likelihood of success on the merits by showing "that it will likely prove infringement of one or more claims of the patents-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer." *Amazon.com*, 239 F.3d at 1351. Such is the case here.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

**2.      Equalia is Likely to Succeed on the Issue of Infringement**

In an infringement analysis, the accused device is compared to the properly construed claims to determine if each claim limitation is met either literally or by substantial equivalent. *Solvay S.A. v. Honeywell Int'l, Inc.*, 622 F.3d 1367, 1379 (Fed. Cir. 2010). This is a question of fact. *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981 (Fed. Cir.1997). As the pantentee, Equalia bears the burden of showing infringement by preponderance of the evidence. *S. Bravo Sys. v. Containment Techs. Corp.,* 96 F.3d 1372, 131376 (Fed. Cir. 1996). Equalia believes that it has done so.

Equalia's comparison of the novel elements of Equalia's patented design, discussed above, serve to highlight the extent of Defendants' infringement. For these reasons, Equalia is highly likely to prove at trial that the Defendants' product infringes the Equalia Patent.

**a.      Design Patent Infringement**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention […] infringes the patent." 35 U.S.C. §271(a). A defendant infringes a design patent by "appl[ying] the patented design, or any *colorable imitation thereof*, to any article of manufacture for the purpose of sale, or [by] sell[ing] or expos[ing] for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. §289 (emphasis added).

Defendants argue that the accused products do not infringe, as a reasonable consumer would not understand them to bear the patented "design or a colorable imitation" thereof. *Id.* To make this determination, courts rely on the ordinary observer test. As laid out in *Egyptian Goddess*, "if, in the eye of the ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Co. v. White*, 81 U.S. 511 (1871)).

Application of the ordinary observer test requires that the Court compare the patented design and the accused product's design. When doing so, the Court compares the patented drawings to the accused product. *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed.

Cir. 2010). The Court must also exclude the unclaimed and functional features from this visual

comparison. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995) ("A design

patent protects the nonfunctional aspects of an ornamental design.").

What ultimately matters is the "overall ornamental visual impression." *Voltstar*

*Technologies, Inc. v. Amazon.com, Inc.*, 2014 WL 3725860, at *2 (N.D. Ill. July 28, 2014)

(quoting *OddzOn Prods., Inc. v. Just Toys, Inv.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). It is a

mistake to attempt to compare the designs on a strictly element-by-element basis. *Crocs*, 598 F.3d

at 1303 ("Without a view to the design as a whole, the Commission used minor differences

between the patented design and the accused products to prevent a finding of infringement.")

"Infringement can be found even if the accused and patented designs are not identical." *Voltstar*,

2014 WL 3725860, at *2 (citing *OddzOn Prods.*, 122 F.3d at 1405); *see also* 35 U.S.C. §289

(defining "infringement" to include "colorable imitation[s]").

### b.     Ornamental Visual Impressions

Defendants' attempt to argue that various references, including references disclosed as part

of Equalia's Information Disclosure Statements to the USPTO and considered by the examiner,

anticipate the Equalia Patent. This argument falls short, as not only has the USPTO examiner,

who is to be granted the benefit of the doubt in invalidity considerations, considered the art, but

the prior art itself falls short of disclosing more than the most basic of similarities.

When considering whether the "ornamental visual impressions" are "substantially

similar," the ordinary observer is "deemed to view the differences between the patented design

and the accused product in the context of the prior art." *Egyptian Goddess*, 543 F.3d at 676. The

analysis therefore takes shape:

> When the differences between the claimed and the accused design
> are viewed in light of the prior art, the attention of the hypothetical
> ordinary observer will be drawn to those aspects of the claimed
> design that differ from the prior art. And when the claimed design is
> close to the prior art designs, small differences between the accused
> design and the claimed design are likely to be important to the eye
> of the hypothetical ordinary observer.

*Id.*

An ordinary observer could find that the accused product infringes on the Equalia Patent

4831-6699-6800.2

because there is substantial similarity in the overall ornamental visual impressions between the two products. As the comparison above shows, the patent design and all version of the accused product share the same overall shape and proportions, and the shapes and relative placement of key, eye-catching features adds, rather than detracts, from the impression of similarity.

The similarities between the Equalia Patent and the accused product, when viewed in light of the prior art, are highlighted as a result of the *dissimilarity* to prior art. Infringement is likely "[i]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art." *Egyptian Goddess*, 543 F.3d. at 676.

Defendants argue that, based on patents previously submitted to the USPTO and additional references, it would have been obvious to a person having ordinary skill in the art to include these elements in the manner depicted in the Equalia Patent. However, they have failed to establish that either these patents alone or in combination point toward integration in the manner depicted in the Equalia Patent. "If the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Egyptian Goddess*, 543 F.3d at 676-77. When viewed together with prior art designs, an ordinary observer would find the accused design and the Equalia Patent design are substantially similar.

### c.   Chronology of Defendants' Halo Board Products

The chronology of the changes to the Halo Board's design also warrants consideration. Halo Board filed a specimen with the USPTO on April 28, 2016 depicting a product *identical* to Equalia's before making minor design modifications to the version of the product now widely sold in the marketplace. Exhibit E to the Complaint. This is not inadvertent infringement. Defendants have knowingly disregarded Equalia's intellectual property rights, as recognized by the USPTO and United States law, and are attempting to unfairly compete with Equalia to Equalia's detriment.

### 3.   Equalia is Likely to Succeed on the Issue of Validity

As an affirmative defense to a motion for a preliminary injunction, a defendant may attack the likelihood of success by raising questions about the validity of the patent. *Titan Tire Corp.*,

566 F.3d at 1377. However, such evidence must raise substantial questions of invalidity. *Id.* Only with a showing of such evidence does the burden shift back to the patentee to present contrary evidence. *Id.* The presumption validity "exists at every stage in the litigation," including the preliminary injunction stage. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998); *see also Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009) ("[T]he patent enjoys the same presumption of validity during preliminary injunction proceedings as at other stages of litigation."). The burden for demonstrating invalidity is higher – clear and convincing – rather than the lower standard for demonstrating infringement, which is by preponderance of the evidence. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010); *S. Bravo Sys.*, 96 F.3d at 1376.

Defendants have argued that the Equalia Patent is invalid either as anticipated by prior art or obvious in light of prior art. "Anticipation" occurs when "every limitation of the claimed invention, either explicitly or inherently" has been previously disclosed. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001). A patent claim is obvious "if the differences between the subject matter sought to be patented [and prior art] would have been obvious at the time the invention was made to a person having ordinary skill in the art[…]." 35 U.S.C. §103(a).

To overcome a presumption of validity, the party asserting invalidity must show it by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011). Equalia will likely withstand any validity challenge to the Equalia Patent. An issued United States patent is presumed to be valid. *See* 35 USC §§171, 282; *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. App'x 964, 983 (Fed. Cir. 2002). The trial court can deny a preliminary injunction if it "concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the pantentee has not shown lacks substantial merit." *Titan Tire*, 566 F.3d at 1379. Defendants have failed to raise a substantial question of validity. Equalia has established that its patent is not anticipated, and that the design is not obvious in light of the prior art.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

### a.   *Ordinary Designer Inquiry as to Obviousness*

With respect to a design, obviousness is determined from the vantage of "the designer of ordinary capability who designs articles of the type presented in the application. *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.,* 853 F.2d 1557, 1564 (Fed. Cir. 1988). An expert's opinion may be relevant to the factual aspects of the analysis leading to a determination of obviousness. *Peterson Mfg. Co. v. Cent. Publ'g, Inc.*, 740 F.2d 1541, 1547 (Fed. Cir. 1984), abrogated on other grounds by *Beatrice Foods Co. v. New England Printing and Lithographing Co.*, 899 F.2d 1171, 1177-78 (Fed. Cir. 1990) ("In civil litigation involving a design [patent], an expert's testimony is most helpful, as in the determination of obviousness with respect to any other type of invention, to explain the technology, the scope and content of the prior art, the differences between the prior art and the invention, and the level of skill in the art.").

### b.   *Analysis of the Overall Design, not Piecemeal Dissection*

Whether a design patent is obvious requires one of ordinary skill in the art to identify a primary prior art reference "the design characteristics of which are basically the same as the claimed design." *Durling v. Spectrum Furniture Co., Inc.,* 101 F.3d 100, 103 (Fed. Cir. 1996) (quoting In re Rosen, 673 F.2d 388, 391 (C.C.P.A. 1982)). The designs of secondary references "may then properly be relied upon for modification of such basic design when the references are 'so related that the appearance of certain ornamental features in one . . . would have suggested application of those features to another." *In re Harvey*, 12 F.3d 1061, 1063 (Fed. Cir. 2003) (emphasis in original) (quotation omitted). "Once that piece of prior art has been constructed, obviousness, like anticipation, requires application of the ordinary observer test, not the view of one skilled in the art." *Int'l Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1240 (Fed. Cir. 2009). "[T]he ordinary observer test, whether applied for infringement or invalidity, and the obviousness test, applied for invalidity under Section 103, focus on the overall designs." *Id.* at 1240-41 (emphasis in original). A piecemeal comparison of different design elements found in the prior art is not permitted under *International Seaway*. "In considering prior art references for purposes of determining patentability of ornamental designs, the focus must be on appearances and not uses." *In re Harvey,* 12 F.3d at 1064. Thus, if the prior art merely suggests "components

Ropers Majeski Kohn & Bentley
*A Professional Corporation*
Redwood City

of design, but not its overall appearance, an obviousness rejection is inappropriate." *Id.* at 1063.

### c.   *Determining if the Design is Dictated by Function*

When analyzing functionality, the issue is not whether the device performs a function; it is whether the design of the device is dictated by function. "[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article." *Id.* (citation omitted). "If the particular design is essential to the use of the article, it cannot be the subject of a design patent." *Id.* If there are alternative designs that can achieve the same function, then the design is not dictated by function. *Best Lock Corp. v. Ilco Unican,* 94 F.3d. 1563, 1566 (Fed. Cir. 1996).

Defendants fail to identify a primary reference that is essentially the same as the Equalia Patent from the perspective of an ordinary observer. They do not identify any secondary references whose design can be used to modify such primary reference. There is a complete failure to identify any suggestion in the prior art for combining any primary reference with any secondary reference. Finally, Defendants have not identified any combination of references based on a primary reference and any secondary references that discloses all the elements of the claimed design of the Equalia Patent from the perspective of an ordinary observer. Rather, Defendants recites a laundry list of prior art references, reciting apparent similarities and differences between the prior art reference and the claimed design of the Equalia Patent.

### d.   *None of the References Cited by Defendants Meet the Burden of Clear and Convincing as to Invalidity*

Under 35 USC §282, a patent which has survived the scrutiny of the Patent Office carries a presumption of validity, and a party objecting to the validity of a patent bears the burden of establishing invalidity. The majority of references cited as a basis for invalidity were before the USPTO during the prosecution of the Equalia Patent. The references alone or in combination are neither basically the same as nor substantially the same as the Equalia Patent design.

/ / /

/ / /

/ / /

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1

## (1)     Patent No. 4,795,181

2      This reference was disclosed by the applicant during the prosecution of the Equalia Patent

3   and was before the USPTO. The reference discloses a three wheeled skateboard containing a

4   center-orientated wheel, but otherwise not disclosing any of the design elements referenced in the

5   Equalia Patent. As referenced by the expert in his report, the relevance of skateboards to

6   electronically motorized one wheel hover boards is limited at best. This device does not have a

7   Circular wheel cover A, or elements B- K. What is depicted as [28] is a laterally spaced structural

8   rib-like flange, is not a wheel bumper. The '181 patent reference is neither basically the same as

9   nor substantially the same as the Equalia Patent design.



FIG.1

## (2)     Patent No. 7,811,217

17      This reference was disclosed by the applicant during the prosecution of the Equalia Patent

18   and was before the USPTO. The reference discloses a motorized apparatus for dynamic balancing

19   exercise, but not a transportation device such as that disclosed in the Equalia Patent. The '217

20   patent reference

21   contained two wheels

22   [56] and [57], not a

23   single wheel. The

24   forward orientation is

25   the opposite of that of

26   the products at issue

27   in this case as was its



Fig. 10

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4831-6699-6800.2

- 14 -

purpose and disclosed capability. This device does not have a circular wheel cover A, or elements

B- L. The '217 reference is neither basically the same as nor substantially the same as the Equalia

Patent design.

### (3)   Patent No. D580,132

This reference was disclosed by the applicant during

the prosecution of the Equalia Patent and was before the

USPTO. The reference discloses a roller set for a roller

skate shoe, but fails to disclose any of the elements

referenced as A – L. The D'132 patent reference is neither

basically the same as nor substantially the same as the

Equalia Patent design.



### (4)   Patent No. D704,786

This reference was disclosed by the applicant during the prosecution of the Equalia Patent

and was before the USPTO. The D'786 patent discloses a skateboard with arguably curved ends,

but done substantially different than the Equalia

Patent. It also depicts a single wheel with two

rows of tread. The reference discloses a

skateboard, but fails to disclose any of the

elements referenced as A – L. The D'786 patent reference is neither basically the same as nor

substantially the same as the Equalia Patent design.

### (5)   Patent. No. D505,469

This reference was disclosed by the applicant during the prosecution of the Equalia Patent

and was before the USPTO. It shows element A, the circular wheel cover, but shows alternative

designs, without the additional visual element of element B, wheel bumpers. It may arguably have

the inset corner bumpers, element H, but again they

appear substantially different in design. The '469 patent

reference is neither basically the same as nor

substantially the same as the Equalia Patent design.

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

### (6)     Patent. No. 4,991,066

The '066 reference disclosed the use of visible led strip lighting [42] on the side of a skateboard. The Equalia Patent does not claim or depict LED lights, as the ornamental design creates the illusion they are not present, and they are



not perceivable until the unit is powered on. As referenced in the Mr. Bigler's report, "[w]hile the accused product duplicated the lighting of the patented product's produced embodiment, it is important to note that lighting is not part of the design patent." *Bigler Report*, pg. 15. Mr. Bigler explains:

> The patented design has a line feature, mid-board that runs the perimeter of the board, and also has a unique "Chamfer", or "Bevel" contour both above and below the perimeter line feature. This bevel was created in the patented product to create the visual illusion that the deck is thinner than it really is.

*Id.* The fact that LED lights shine through that design element, J, and are not visible until powered on, is not captured in the design patent. The '066 patent discloses a completely different light housing than the Equalia Patent.

Also at issue is the different manner the Equalia Patent discloses the lighting of the front [20] and back [22] of the board, related but different than element L. Element L is the light housing not the light, and again it does the design completely different than the '066 patent reference, using more than a single light at each end. The '066 patent reference is neither basically the same as nor substantially the same as the Equalia Patent design.

### (7)     Patent. No. 6,802,636

The '636 patent reference is focused on the use of LED light around the edge of a skateboard. The fact that LED lights shine through element J design element of Equalia Patent, and are not visible until powered on, is not captured in the design patent. The '636 patent



Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1  discloses a completely different light housing than the Equalia Patent. The '636 patent reference is

2  neither basically the same as nor substantially the same as the Equalia Patent design.

3  **(8)     Patent. No. 7,053,288**

4      The '288 patent reference appears

5  to be cited based on the fact that it has

6  speakers, but the orientation of the

7  speakers and placement is completely

8  different than the Equalia Patent. The



9  Equalia Patent is not claiming speakers, but rather the housing design and orientation in the

10  overall hover board product. This reference actually demonstrates that the design considerations

11  have overridden the speakers' placement and orientation. The '288 patent reference is neither

12  basically the same as nor substantially the same as the Equalia Patent design.

13  **(9)     Patent. No. 4,824,139**

14      The '139 patent reference again

15  teaches away from the speaker housing

16  design and orientation and confirms that

17  function would dictate as it did in the '288

18  patent reference to have the speakers facing

19  the rider on the upper surface of the board.



20  This reference demonstrates that the design considerations have overridden the speakers'

21  placement [18] and orientation. The '139 patent reference is neither basically the same as nor

22  substantially the same as the Equalia Patent design.

23  **B.     Equalia Will Suffer Irreparable Harm Absent a Preliminary Injunction**

24      Equalia will suffer irreversible harm if a preliminary injunction is not ordered. "Loss of

25  goodwill is an injury that can be considered irreparable, and thus may support injunctive relief."

26  *Amylin Pharm., Inc. v. Eli Lilly & Co.*, 456 F. App'x 676, 678 (9th Cir. 2011) *See, e.g., Stuhlbarg*

27  *Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir.2001) ("Evidence of

28  threatened loss of prospective customers or goodwill certainly supports a finding of the possibility

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

of irreparable harm."); *see also Rent–A–Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir.1991) (same). Equalia meets the irreparable injury prong because it will suffer permanent loss of customers to a competitor, as well as its hard-earned goodwill. As it is not possible to calculate money damages to compensate for loss of customers and goodwill resultant from Defendants' infringement, injunctive relief is appropriate.

### 1.   Equalia Will Permanently Lose Customers as a Result of Defendant's Infringement

A loss of customers is an "irreparable, noncompensable harm" that supports the grant of preliminary injunction. *Merrill Lynch, Pierce, Fenner and Smith v. Bradley*, 756 F.2d 1048, 1055 (4th Cir. 1994). "While the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir. 1994).

In the absence of a preliminary injunction, Equalia will permanently lose customers. Because hoverboards are generally considered to be a luxury good, the typical consumer does not purchase more than one. Thus, once a consumer purchases a hoverboard, it is unlikely that they will purchase another in the near future, if ever, and each customer therefore represents a single potential sale. Every time Defendants sell an infringing hoverboard, Equalia forever loses the opportunity to sell that customer its own product. Thus, Equalia is irreparably harmed because every act of infringement permanently removes a customer from the market. Halo Board is currently only selling these products online, reducing the care and review prior to purchase.

### 2.   Equalia Will Be Harmed by Price Erosion Caused by Defendants

In addition to loss of customers and goodwill, Equalia has established likelihood of price erosion. The likelihood of price erosion and loss of market share absent an injunction is strong evidence of irreparable harm. *See Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1358 (Fed. Cir. 2001); *see also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382-83 (Fed. Cir. 2006) (affirming the district court's finding of irreparable harm based, in part, on price erosion); *Polymen Techs,. Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

- 18 -

Allowing Defendants to sell their accused products for less than Equalia will offer its own products will cause permanent price erosion. Equalia launched its "GeoBlade" hoverboard at CES for an approximate starting price of $1,495. Dckt. 10-1, ¶17. However, Defendants' accused product, which does not incorporate the number of internal technological innovations and improvements and is of lower build quality, sells between $697 to $997, thus undercutting Equalia. *Id.* at Ex. F, pg. 8. The GeoBlade utilizes alternative materials to maintain the product's quality while lowering its price and was developed to compete with the much lower price of Defendants' accused product. *Id.* at ¶17.

The Federal Circuit has examined this issue:

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

*Polyment Techs.*, 103 F.3d at 975-76. Because of price erosion and loss of market position caused by Defendants' infringement, Equalia will be irreparably harmed. *See Purdue Pharma.*, 237 F.3d at 1368 ("Given the testimony of the likelihood of price erosion and loss of market position without corresponding market expansion from the introduction of Roxane's product, we see no deficiency in the district court's finding of irreparable harm.").

In light of these factors, Equalia has established a likelihood of irreparable harm in the absence of injunctive relief.

### 3. Equalia Will Be Harmed by Inferior Products with the Same Design

If a plaintiff demonstrates a possible loss of goodwill in the absence of a preliminary injunction, the irreparable harm prong is satisfied. *See Multi-Channel TV Cable Co.*, 22 F.3d at 552. If Defendants are allowed to continue infringing the Equalia Patent, the damage to Equalia's reputation and goodwill will be incurable.

As demonstrated, Equalia's hoverboard incorporates patented technology covered under the Equalia Utility Patent. This technology is not a part of Defendants' accused product, which

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4831-6699-6800.2

1    does not offer the technological features incorporated into Equalia's board. As a result, consumers

2    associating Defendants' device with Equalia will purchase the infringing device and receive a

3    product inferior to Equalia's. Equalia's reputation and goodwill on the marketplace will suffer as a

4    direct result. Absent a preliminary injunction, the harm to Equalia's reputation and goodwill will

5    be incurable.

6              **4.        Permanent Harm to Equalia is Imminent**

7          The Supreme Court of the United States has indicated that plaintiffs seeking preliminary

8    relief must demonstrate that irreparable harm is likely in the absence of the requested relief.

9    *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. at 375 (indicating that a movant for

10   preliminary injunction must demonstrate more than a possibility of irreparable harm). Equalia

11   will suffer a permanent loss of customers and market share, price erosion, and a loss of goodwill

12   and reputation in the absence of the sought relief.

13         Defendants are marketing and selling the accused product. If allowed to go forward,

14   Equalia will suffer permanent loss of customers and market share because once a customer has

15   purchased a hoverboard product, there is very little possibility of recapturing that customer (i.e.,

16   customers usually do not purchase more than one hoverboard product). Further, Equalia has

17   suffered and will continue to suffer price erosion as a result of Defendants' sale of products in the

18   market, as they have priced their accused products below Equalia's (e.g., $697 to $997 for a Halo

19   Board versus $1,495 to $4,375 for one of Equalia's hoverboard models.).

20         **C.       The Balance of Hardships Weighs in Favor of Granting a Preliminary
                        Injunction**

21

22         The court must consider whether the balance of equities tips in the favor of granting the

23   injunction. *Winter*, 129 S.Ct. at 374. Under the present circumstances, greater injury will result

24   from denying the request than from granting it. If Defendants are allowed to continue their

25   infringing acts, Equalia will lose customers, market share, pricing structure, and goodwill. While

26   Defendants will lose sales if the Court grants this motion, any loss of sales by Defendants does

27   not rise to the level of the permanent and irreparable harm to Equalia caused by the infringement.

28   *See Pfizer, Inc. v. Teva Pharms. USA*, 429 F.3d 1364, 1382 (Fed. Cir. 2005) ("Simply put, an

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

1    alleged infringer's loss of market share and customer relationships, without more, does not rise to

2    the level necessary to overcome the loss of exclusivity experienced by a patent owner due to

3    infringing conduct.").

4         Defendants chose to enter the market with a product infringing on the Equalia Patent.

5    Thus, any harm to Defendants is due to their own decision to violate Equalia's intellectual

6    property and risk a lawsuit and court order enjoining sales of the accused product. Such harm to

7    Defendants cannot outweigh the irreparable harm Equalia will experience due to Defendants'

8    infringing conduct.

9         **D.      Granting the Injunction Serves the Public Interest**

10        The public interest will be served by granting Equalia's motion for a preliminary

11   injunction. Generally, the public has a strong interest in the preservation of patent rights. *See*

12   *Mazer v. Stein*, 347 U.S. 201, 219 (1954) ("The economic philosophy behind the clause

13   empowering Congress to grant patents and copyrights is the conviction that encouragement of

14   individual effort by personal gain is the best way to advance public welfare through the talents of

15   authors and inventors in 'Science and useful Arts.'"); *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d

16   1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in

17   encouraging innovation. Indeed, the 'encouragement of investment-based risk is the fundamental

18   purpose of the patent grant, and is based directly on the right to exclude.'") (quoting *Patlex Corp.*

19   *v. Mossinghoff*, 758 F.2d 594, 599 (Fed. Cir. 1985); *Auguat, Inc. v. John Mezzalingua Assc. Inc.*,

20   342 F.Supp. 506, 509 (N.D.N.Y. 1986) ("The public interest in a patent case is strongly weighted

21   toward protecting the rights of patent holders.").

22        While the public has a strong interest in enforcement of valid patent rights, there exist

23   additional reasons why the public interest favors a preliminary injunction in this case. There is a

24   strong public interest in protecting and encouraging the types of investments made by Equalia and

25   its efforts to develop and design new personal mobility devices. Equalia sought to protect its

26   investment of time and resources by applying for a patent, and the USPTO granted such rights.

27   Defendants have sought to capitalize on Equalia's design without paying for the right to use this

28   patented design. The public has an interest in encouraging designers and innovators like Equalia

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

4831-6699-6800.2

to develop useful technologies and to bring those innovations to market. Allowing Defendants to sell their accused products during the pendency of this litigation would undermine those important public interests in innovation.

## IV.   ROBERT BIGLER QUALIFIES AS AN EXPERT UNDER FRE 702

Under Federal Rule of Evidence 702, a witness may "testify in the form of an opinion or otherwise" if that witness "is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

Mr. Bigler is a qualified expert on the design of the Equalia Patent as the inventor, as well as an expert on the internal workings of the hoverboard itself, also as its inventor. Defendants' have made no colorable showing as to why or how Mr. Bigler is unqualified or unsuitable to describe the design and development of his own patented product.

## V.   CONCLUSION

For the foregoing reasons, Equalia respectfully requests that the Court issue a preliminary injunction based on Defendants' infringement of the Equalia Patent.

Dated: January 10, 2017                    ROPERS, MAJESKI, KOHN & BENTLEY


By: _/s/ Lael D. Andara_
STEPHEN J. ERIGERO
TIMOTHY J. LEPORE
LAEL D. ANDARA
MARIE E. SOBIESKI
Attorneys for Plaintiffs
EQUALIA, LLC and HOVERBOARD
TECHNOLOGIES CORPORATION

4831-6699-6800.2