1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

EQUALIA, LLC and HOVBERBOARD
TECHNOLOGIES CORPORATION,

Plaintiff,

v.

KUSHGO LLC, et al.,

Defendants.

Case No. 2:16-cv-02851-RFB-CWH

**ORDER**

Plaintiff's Motion for a Temporary
Restraining Order and Preliminary Injunction
(ECF No. 10).

## I.     INTRODUCTION

Before the Court is Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 10). The Court has reviewed the parties' papers and heard oral argument. The Court previously announced its ruling orally in which it granted Plaintiff's Motion in part. This written order memorializes and elaborates this oral ruling.

## II.     BACKGROUND

### A.  Allegations & The Design Patent

Plaintiffs Equalia, LLC, and Hoverboard Technologies Corporation filed a Complaint on Dec. 9, 2016 against Defendants Kushgo LLC, Halo Board LLC, Arthur Andreasyan and Shenzhen Windgoo Intelligent Technology Co. Ltd.. ECF No. 1.  (Only the first three defendants have appeared in this case.) The complaint asserts two count: (1) Infringement of Plaintiff's design patent under 35 U.S.C. § 271, and (2) Unfair and Deceptive Trade Practices under 15 U.S.C. § 45.

Plaintiffs filed the instant Emergency Motion for TRO and Preliminary Injunction on Dec. 28, 2016. ECF No 10. Defendants filed a Response on Dec. 29, 2016. ECF No. 17. Equalia seeks an injunction based on alleged infringement of its design patent. The patent issued as United States Design Patent No. D768,252 on October 4, 2016, and is titled Pitch-Propelled Vehicle. Mot for TRO, Bigler Decl. at ¶4.

The patent claims the ornamental design as depicted in five figures. The Court bases its conclusions on the images as depicted in the patent. The Court finds that the patent depicts the following distinct features, [1] among others:

1. An oblong-shaped board with rounded edges and upturned ends.
2. A slender single wheel in the center of the board, with two square-shaped bumper features with linear grooves on either side of the top of the wheel on the top of the board, and two angled plastic covers on either side of the bottom of the wheel.
3. A cover or dome on top of the wheel, conforming to the contour of the wheel.
4. A strip along the perimeter edge.
5. A thick edge, consisting of that strip, and thick planks of material on either side, with the thick planks sloping inward toward the strip at the edge.
6. Speakers on each end of the bottom of the board with a cone-shaped recess in the middle of the speakers containing a single light feature.
7. Triangular skid pads on each corner, with smaller round protruding shape features on each of them.
8. Dark, crescent-shaped displays on top front and back of the board.
9. Ten, diamond-shaped panels dividing up the top surface of the board.

Equalia seeks the following injunctive relief: (1) An order restraining Defendants from offering the "Halo Board" products for sale in the United States; (2) A seizure order for all of Defendants' infringing products, including the "Halo Board" from CES and Defendants' United

---

[1] These findings as to the features serve only to clarify the basis for this order, and should not be interpreted as the Court's final construction as to the features in the design patent. The identification in this order do not constitute the law of the case and is not dispositive as to future constructions of the design patent by the Court.

States warehouse. (3) An order to show cause regarding the issuance of a preliminary injunction based on the ruling for a TRO.

### B.  Evidentiary Hearing

The Court held an evidentiary hearing with expert testimony on January 3, 2016. The Court incorporates by reference its statements and findings made on the record at this hearing (and previous hearings).  At the January 3 hearing, the Court heard expert testimony from Plaintiff's expert Robert Bigler and Defendants' expert Brian Sanderson, as to the functionality of the design features and overall design of the board. Mr. Bigler testified that he is the owner and CEO of Plaintiff Equalia LLC, that he designed the design patent, that he has a degree in mechanical engineering from San Jose state university, and that he has been involved in the creation and testing of the product bearing the design patent. Mr. Sanderson testified that he is trained as an industrial designer, that he has degrees in industrial design and visual art and oil painting from Brigham Young University, and that since acquiring his degrees he has worked in industrial design, including projects related to board sports.

The Court first notes that it finds Defendants' argument as to a <u>Daubert</u> disqualification of Plaintiff's expert witness to be unpersuasive. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). Defendants argues that <u>Daubert</u> and rule 403 require the exclusion of testimony if the expert witness has an interest in the case. <u>Daubert</u> nowhere states that an expert witness must be disqualified because he has a relation to a party or a direct financial stake in the outcome. <u>Daubert</u> states that "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." <u>Id.</u> at 592. The Court did so here. Mr. Bigler submitted his CV, and his testimony attests to his engineering and design background, as well as his direct experience testing the functionality of the board. The Court finds no reason that Mr. Bigler was not qualified to testify as an expert in this case.

The testimony of both witnesses focused on the functionality of the various features and of the design of the boards, including whether or not alternative designs could achieve the same or

similar function. Upon observation, the Court generally credits and accepts Mr. Bigler's testimony, and does not credit or accept Mr. Sanderson's testimony.  Sanderson's opinion was significantly less persuasive because he lacked sufficient knowledge of prior art related to the boards and knowledge of the actual operation and internal construction of the boards.  The Court finds that Sanderson did not credibly establish the existence of relevant prior art.  He was not familiar with the various patents submitted by Defendants as possible relevant prior art for Plaintiff's design.

Plaintiffs admitted exhibits including but not limited to art in the form of design patent No. D769,997 S, a single-wheeled board that the plaintiff testified is self-propelled, art in the form of a utility patent, No. 4,824,139, depicting a speaker on the bottom of a skateboard, a trademark application by Defendants showing a prior version of the Halo Board, and an image of the inside of a Halo Board, showing that only one of the spaces underneath a speaker feature contains an actual speaker.

Defendants admitted exhibits including but not limited to an advertising video clip of the Plaintiff's board being used, as well as prior art in the form of utility patent No. 4,991,066, showing lights on the side of a board, design patent No. 7,811,217 B2, depicting a board with a center wheel and bumpers entitled "Motorized Apparatus and Method for Dynamic Balancing Exercise," and design patent No. D505,469 S, depicting a board with two wheels that are covered on the top side of the board.

### III.    LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

To prove a likelihood of success on the merits in a case alleging patent infringement, the plaintiff "must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) it will likely prove that [the Defendants infringe on the Plaintiffs'] patent and (2) its infringement claim will likely withstand [Defendants'] challenges to the validity and enforceability of the . . . patent." Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Raising a "substantial question" as to "validity, enforceability, or infringement" defeats a request for a preliminary injunction based on patent infringement. Id.

The Ninth Circuit has also held that a preliminary injunction may issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). According to this test, a plaintiff can obtain a preliminary injunction by showing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1134-35 (citation omitted).

In considering a preliminary injunction alleging patent infringement, the precedent of the Federal Circuit applies to substantive issues within the domain of patent law. See Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446 (Fed Cir. 1988).

## IV.    DISCUSSION

### A.  Likelihood of Success On The Merits

The Court finds that the Plaintiff has demonstrated a likelihood of success on the merits of it claim of patent infringement as to its design patent **only** at this stage of the case and **only** in reference to the CES trade show.  This finding encompasses a few subordinate findings due to the complexity of patent infringement analysis.  Each of these respective analyses is discussed below.

### 1.  Patent Validity

The Court finds the Plaintiff has established a likelihood of success on the merits against Defendants' argument that Plaintiff's patent is invalid.  Defendants argue that the Court should reject the Plaintiff's Motion because the Plaintiff's design patent is invalid due to it not being new or ornamental.  Defendants argue that prior art illustrates the obviousness of the design and

that expert testimony demonstrates the non-ornamental nature of the distinguishing features of the design patent.  The Court finds, however, that the overall combination of features in the design is not obvious based on the prior art submitted by the Defendants and that design features which the Court considers for its analysis of the patent are not primarily functional.

### a.  Legal Standard Regarding Burden For Injunction

A defendant may attack validity on the grounds that the patent has not met "the criteria of being new, original, and ornamental." Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1460 (Fed. Cir. 1997).

"[A]n issued patent comes with a statutory presumption of validity under 35 U.S.C. § 282." Titan Tire Corp v. Case New Holland, Inc. 566 F.3d 1372, 1376 (Fed. Cir. 2009). This presumption applies during preliminary injunction proceedings. Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1377 (Fed. Cir. 2009). "Because of this presumption, an alleged infringer who raises invalidity as an affirmative defense has the ultimate burden of persuasion to prove invalidity by clear and convincing evidence, as well as the initial burden of going forward with evidence to support its invalidity allegation." Id.  In the context of a preliminary injunction, however, the application of the burdens between the parties is more nuanced.  Id. at 1379.  As the Federal Circuit has explained, "when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger [to the patent] will be able to prove at trial, by clear and convincing evidence, that the patent is invalid. We reiterate that the 'clear and convincing' standard regarding the challenger's evidence applies only at trial on the merits, not at the preliminary injunction stage. The fact that, at trial on the merits, the proof of invalidity will require clear and convincing evidence is a consideration for the judge to take into account in assessing the challenger's case at the preliminary injunction stage; it is not an evidentiary burden to be met preliminarily by the challenger." Id. at 1379-80.

/ / /

/ / /

/ / /

1

**b.  Legal Standard for Anticipation and Obviousness**

2

        A patent may be invalidated for "for obviousness under § 103" or "for anticipation [or

3

lack of novelty] under § 102." Int'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233,

4

1240 (Fed. Cir. 2009).

5

        "A person shall be entitled to a patent unless--(1) the claimed invention was patented,

6

described in a printed publication, or in public use, on sale, or otherwise available to the public

7

before the effective filing date of the claimed invention[.]" 35 U.S.C. § 102(a)(1). "Because there

8

are many ways in which a reference may be disseminated to the interested public, public

9

accessibility has been called the touchstone in determining whether a reference constitutes a

10

printed publication bar" under the statute. In re Hall, 781 F.2d 897, 898 (Fed Cir. 1986) (internal

11

quotations omitted).   Design patent anticipation requires a showing that a single prior art

12

reference is "identical in all material respects" to the claimed invention. Door-Master Corp. v.

13

Yorktowne, Inc., 256 F.3d 1308, 1312 (Fed. Cir. 2001) (quoting Hupp v. Siroflex of Am., Inc.,

14

122 F.3d 1456, 1461 (Fed. Cir. 1997)).  Anticipation can also occur based upon a comparison of

15

prior art that is a combination of difference references in prior art.  Int'l Seaway, 589 F.3d at

16

1240.  "Once that piece of prior art has been constructed, obviousness, like anticipation, requires

17

application of the ordinary observer test."  Id.  Two designs are substantially the same if their

18

similarity is such as to deceive an ordinary observer into confusing one for the other. Egyptian

19

Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 681 (Fed. Cir. 2008).

20

        As noted above, "[t]he design must also be non-obvious." OddzOn Products, Inc. v. Just

21

Toys, Inc., 122 F.3d 1396, 1404 (Fed. Cir. 1997). "Invalidating prior art must show or render

22

obvious the ornamental features of the patented design." Id.  "The underlying factual inquiries

23

include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the

24

differences between the claimed invention and the prior art; and (4) objective evidence of non-

25

obviousness." MRC Innovations, Inc. v. Hunter Mfg., LLP, 747 F.3d 1326, 1331 (Fed. Cir.

26

2014). "In the context of design patents, the ultimate inquiry under section 103 is whether the

27

claimed design would have been obvious to a designer of ordinary skill who designs articles of

28

the type involved." Id. at 1331. "To answer this question, a court must first determine whether

- 7 -

one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." Id. "That inquiry involves a two-step process. First, the court must identify a single reference, a something in existence, the design characteristics of which are basically the same as the claimed design. The 'basically the same' test requires consideration of the visual impression created by the patented design as a whole. We have noted that the trial court judge may determine almost instinctively whether the two designs create basically the same visual impression, but must communicate the reasoning behind that decision." Id. (internal citations and quotations omitted).

"Once the primary reference is found, other 'secondary' references may be used to modify it to create a design that has the same overall visual appearance as the claimed design. These secondary references must be so related [to the primary reference] that the appearance of certain ornamental features in one would suggest the application of those features to the other." Id. (internal citations and quotations omitted).

Importantly, "if no prior art creates basically the same visual impression as does [the] claimed design" then "it is improper to invalidate a design patent on grounds of obviousness." Durling v. Spectrum Furniture Co., 101 F.3d 100, 105 (Fed Cir. 1996)

### c. Discussion

Plaintiff has established a likelihood of success on the merits regarding the challenge to the novelty and obviousness of the patented design at this stage of the litigation and only in reference to the CES trade show. The Court has considered prior art submitted in the record and admitted at the hearing on January 3, 2017.

The Court finds that only one of the cited examples of prior art might possibly be considered as a primary reference under the "basically the same" test. Exhibit C to Defendants' Supplementary Memorandum, Patent No. US 7,811,217 B2, for "motorized apparatus and method for dynamic balancing exercise" depicts a center wheel, with two square bumpers on either side, on a board with upturned ends.  However, the Court finds that this "balance board" does not create the same "visual impression created by the patented design as a whole." Hunter Mfg., LLP, 747 F.3d at1331.  The central wheel or fulcrum for this device has a completely different appearance

than the domed wheel of the design patent.  This balance board does not have the elongated board with screens on either end.  The side profile of the boards is different with the balance board having a second wheel or fulcrum under the board so that there is not the same appearance of gliding or skating or "hovering" as there is with the patented design.  This balance board does not have the same visual profile on its underside in terms of the symmetrical padding, stereos and lighting.

Reviewing the features in the other patents identified in the Memorandum, as well as those admitted at the hearing, the Court with respect to obviousness also does not find that the ornamental features depicted "would suggest [their] application" to, or combination with the basically similar design of Patent No. 7,811,217 B2. The combination of features in Plaintiff's design patent would not have been obvious to a designer of ordinary skill who designs articles of the type involved. As already noted above (and discussed below), the patent contains a unique combination of features constituting a design that is primarily aesthetic. The non-obvious, aesthetic choices within that design include, but are not limited to, the following: a plastic cover of the slender center wheel following the contours of the wheel; fully rounded ends of the board; a chamfered top edge of the board necessitating recessed screw holes; a crescent-shaped LED display at the end of the board; and speakers on the underside of the ends of the board. Together with the rest of the board, these features constitute an overall design that would not have been obvious to a designer of ordinary skill.

Importantly, the Court finds that the defense expert Sanderson did not offer credible testimony that the patented design would be obvious to a designer of ordinary skill who designs objects in this area.  He did not provide a credible basis for his general and conclusory statements about the patented design.  He did not cite to features of prior art that would suggest the overall patented design.

The remaining question is whether an ordinary observer would confuse the patented design with those depicted in prior art (or a combined design of features depicted in prior art). The Court finds that she would not. The closest of the proffered prior art is the "motorized apparatus" discussed above. The patent design is readily distinguishable to an ordinary observer because of its shape, wheel cover, and numerous other features not depicted in that art.  Even if various

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

features of prior art were to be combined in a constructed comparison design of prior art, the Court would still find that such a construction of different features of prior art would not be confused with the patented design by an ordinary observer.  That is because the prior art does not contain all of the features of the patented design such as the dual underneath speakers and slender domed wheel. The Court finds that neither that art, nor any of the others in the record would confuse an ordinary observer.

### d.  Legal Standard for Ornamental and Functional

"[The Federal Circuit] has described as "stringent" this standard as it applies to invalidating design patents on grounds of functionality." Ethicon Endo-Surgery, Inc. v. Covidien, Inc. 796 F.3d 1312, 1328 (Fed. Cir. 2015). "If a particular design is essential to the use of an article, it cannot be the subject of a design patent. We have found designs to be essential to the use of an article when the claimed design is dictated by the use or purpose of the article. Design patents on such primarily functional rather than ornamental designs are invalid" Id. (internal quotations and citations omitted).

"[T]he overall appearance of the article—the claimed design viewed in its entirety—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation." Id. at 1329. "For example, [the Federal Circuit] acknowledged in L.A. Gear that certain elements comprising the claimed design of an athletic sneaker each had a utilitarian purpose, including a "delta wing" supporting the foot and reinforcing the shoelace eyelets, side mesh paneling further supporting the foot, a "moustache" at the back of the shoe cushioning the Achilles tendon and reinforcing the rear of the shoe, and the particular positioning of each of these elements within the design of the shoe. Nevertheless, [it] explained that the utility of each of the various elements that comprise the design is not the relevant inquiry with respect to a design patent because whether a design is primarily functional or primarily ornamental requires viewing the claimed design in its entirety." Id. (internal quotations and citations omitted).

The Federal Circuit "has not mandated applying any particular test for determining whether a claimed design is dictated by its function and therefore impermissibly functional." Ethicon Endo-Surgery, 796 F.3d at 1229. However, it has provided the following guidance: "When there are

several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." L.A. Gear, Inc. v. Thom McAn Shoe Co.Eyeglasses, 988 F.2d 1117, 1123 (Fed Cir. 1993). "[T]o be considered an alternative, the alternative design must simply provide the same or similar functional capabilities." Ethicon, 796 F.3d at 1131; See Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1378 (internal quotations omitted) (reversing functionality finding because alternative mirror designs could still provide a similar level of performance).

"[I]t is relevant whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes." Hupp v. Siroflex of America, Inc., 122 F.3d 1456, 1460 (Fed. Cir. 1997). Where the existence of alternative designs is not dispositive of the invalidity inquiry, the following factors may be considered: [1] Whether the protected design represents the best design; [2] whether alternative designs would adversely affect the utility of the specified article; [3] whether there are any concomitant utility patents; [4] whether the advertising touts particular features of the design as having specific utility; and [5] whether there are any elements in the design or an overall appearance clearly not dictated by function. Id. (citing Berry Sterling Corp v. Pescor Plastics, Inc, 122 F.3d 1452, 1456 (Fed Cir. 1997)).

### e.   Functional or Ornamental – Discussion

Plaintiff's design patent is for a "pitch-propelled vehicle." As a preliminary matter, the Court notes that however the function is defined—whether as a self-propelled recreational vehicle, a self-propelled board requiring balance, or a self-propelled board requiring balance with a central wheel, or any of the above along with durability, safety, an LED display, lighting, and audio-emission capabilities, the Court finds that the overall design of the board is not dictated by its function. The Court's determination is based upon its review of the evidence submitted in the record and evaluation of the testimony of the experts in this case.

The Court's conclusion regarding the overall ornamental nature of the design is based upon several findings. First, the Court finds that there are alternative designs that would serve similar functions. Specifically, the design is for a self-propelled pitched board could be achieved using

multiple configurations of design elements.  For example, the board could be propelled by more than one wheel or the board could be propelled by a broad single wheel.  Indeed, expert testimony confirmed that using multiple wheels would make the board more stable and easier to ride. Additionally, the speakers for the board could be on top of the board where they would be more functional.  The ends of the board could be square and not upturned and achieve similar functionality.

Furthermore, the top design of the board in terms of the screens and diamond-shaped patterns are not primarily functionality in the context of the overall design.  The screens could have been placed in different places on the board.  Indeed, Bigler noted that the crescent shape of the screens and their placement was more expensive without improving on functionality as opposed to placing the screen(s) in the center area of the board. The diamond-shaped pattern does not serve any particular function other than improving on the aesthetics of the board.

The Court also notes that the dome covering of the wheel to conform with the contour of the shape of the single wheel is primarily ornamental in the overall context of the design.  As noted, the wheel did not have to be placed where it is or with the narrow profile that it has.  To the extent that the dome itself is functional—and the Court does not find it necessarily to be so—its shape and appearance are not dictated by function.  Thus, the dome in the overall design is not primarily functional.

In conclusion, Plaintiff has shown a strong likelihood that it will prove that its design patent contains a new, novel, and non-obvious combination of features that constitute a design that is primarily aesthetic, and that the patent will likely withstand Defendants' challenges to validity. Defendants have failed to raise a substantial question as to the validity of the patent.

**B.  Infringement**

**1. Legal Standard**

In <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 543 F.3d 665 (Fed. Cir. 2008), the Federal Circuit explicitly rejected a distinct "point of novelty" test and reaffirmed the "ordinary observer" test as the proper standard for design patent infringement. "Under the [ordinary observer] test, as this court has sometimes described it, infringement will not be found unless the accused article

embod[ies] the patented design or any colorable imitation thereof." Id. at 678. In Egyptian Goddess, the Federal Circuit reiterated the oft-cited characterization of the Supreme Court: "The Gorham Court then set forth the test that has been cited in many subsequent cases: '[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.'" Id. at 670 (citing Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871)).

The Federal Circuit has described the test as "whether an ordinary observer, familiar with prior art, would be deceived into believing that the infringing product is the same as the patented product. Egyptian Goddess, 543 F.3d at 681.

## 2. Discussion

The Court finds that the novel combination of features in Plaintiff's design patent—and thus the focal points for an ordinary observer who is familiar with prior art—include but are not limited to: a narrow central wheel covered by a plastic dome that follows the contours of the wheel; an oblong-shaped board with fully rounded up-turned ends; a crescent-shaped dark display at the either end of the board; and speakers on the underside of the board under the upturned end with a single LED light in a rounded recess between the speakers. Defendants' board includes this combination of features in an extremely similar design. Considering the prior art in the record, including that included in Defendants' supplementary memorandum and that admitted at the January 3, 2017 evidentiary hearing, the Court concludes that Plaintiff has shown a strong likelihood that an ordinary observer familiar with the prior art would be deceived into believing the products are the same.

The Court finds that Plaintiff has demonstrated that (1) it will likely prove that [the Defendants infringe on the Plaintiffs'] patent and (2) its infringement claim will likely withstand [Defendants'] challenges to the validity and enforceability of the . . . patent." Genentech, Inc., 108 F.3d at 1364.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.   Irreparable Harm

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001). Plaintiff has not yet launched its product, and claims substantial investment in an initial launch that will play a significant role in its eventual market share and success. The CES trade show, an important marketing event, will play an important role in the launch of Plaintiff's product and the reputation of the product associated with this launch. The marketing of a very similar board, which the Court finds would appear at a convention booth within plain sight of Plaintiff's product, could jeopardize future customers for the plaintiff. Therefore, the Court finds that there would be irreparable harm absent an injunction as to the trade show.

## D.   Balance of the Equities

While an injunction against Defendants as to the trade show would cause financial harm to defendants, allowing presentation of the infringing product would harm Plaintiff's financially as well as reputationally, and deprive Plaintiff of the full intangible benefit of advertising and promoting its launch without unlawful competition at the trade show. Moreover, as pointed out by Plaintiffs, Defendants market similar products, and would not be shut out of the related business. Defendants do not present other compelling facts showing that if infringement has occurred, the balance would nonetheless tip in their favor. The Court finds that the balance of the equities tips sharply in favor of the Plaintiff.

## E.   Public Interest

Although the public has an interest in competition, the patent laws express the preference, in cases of infringement, for temporary preferences in order to spur innovation. Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation. Indeed, the 'encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'"). Absent an interest other than the competing interests in spurring innovation

and competition, public interest will not bar an injunction prohibiting the sale or advertising of an allegedly infringing product.

## V.     BOND

For the reason stated on the record at the hearing on January 3, 2017, the Court ordered the posting of $50,000 bond by the Plaintiff's. Plaintiffs have posted the requisite bond.

## VI.     CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Temporary Restraining Order is granted in part, as follows:

Defendants Kushgo, LLC, Halo Board, LLC, and Arthur Andreasyan, as well as their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with them who receive actual notice of this order are TEMPORARILY RESTRAINED from any of the following:

- Displaying, Depicting, Advertising, Marketing, or Selling the Halo Board at the 2017 Las Vegas International Computer Electronics Show. Pursuant to Defendants representation in Court, this shall extend to any similar product with a center wheel.
- Displaying, Depicting, Advertising, Marketing, or Selling the Halo Board or any similar product with a center wheel online. Defendants will have one week from the issuance of this order to remove the product for sale and any related marketing from their website.

**IT IS FURTHER ORDERED** that Defendants will remove any reference or resemblance to its product from its company website or that of its supplier or distributors until after the Court's determination regarding the possible imposition of a more comprehensive injunction including a nationwide injunction against Defendants.  Defendants will have until January 11, 2017 to remove all such references or images from their websites.

**IT IS FURTHER ORDERED** that Plaintiffs shall be required to post security of $50,000. This Order shall take effect as soon as Defendants receive actual notice of the posting of this

security, and shall expire at the close of business on January 18, 2017, unless extended pursuant to Fed. R. Civ. P. 65(b)(2) or dissolved prior to that date by the Court.

**IT IS FURTHER ORDERED** that a hearing regarding the issuance of a preliminary injunction, as well as broader injunctive relief, is set for Friday, January 13, 2017 at 10:00 a.m.

**DATED** this <u>11th</u> day of January, 2017.

_____

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**