UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| EQUALIA, LLC and HOVBERBOARD TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>KUSHGO LLC, et al.,<br><br>Defendants. | Case No. 2:16-cv-02851-RFB-CWH<br><br>**<u>ORDER</u>**<br><br>Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 10); Plaintiff's Motion for Preliminary Injunction (ECF No. 42). |

## I.  INTRODUCTION

Before the Court are Plaintiffs' Motions for a Preliminary Injunction (ECF Nos. 10, 42). The Court has reviewed the parties' papers and heard oral argument. For the reasons stated below, the Court grants a preliminary injunction as described at the conclusion of this order.

## II.  BACKGROUND

### A. Allegations & The Design Patent

Plaintiffs Equalia, LLC, and Hoverboard Technologies Corporation filed a Complaint on Dec. 9, 2016 against Defendants Kushgo LLC, Halo Board LLC, Arthur Andreasyan and Shenzhen Windgoo Intelligent Technology Co. Ltd.. ECF No. 1.  (Only the first three defendants have appeared in this case.) The complaint asserts two counts: (1) Infringement of Plaintiff's design patent under 35 U.S.C. § 271, and (2) Unfair and Deceptive Trade Practices under 15 U.S.C. § 45.

Plaintiffs filed the instant Emergency Motion for TRO and Preliminary Injunction on Dec. 28, 2016. ECF No 10. Defendants filed a Response on Dec. 29, 2016. ECF No. 17. The

Court granted a temporary restraining order as to the CES trade show only on the record at the hearing on January 4, 2016, and issued its written order on January 11, 2016. ECF Nos. 37, 43. Plaintiffs filed a separate Motion for a Preliminary Injunction on January 10, 2017. ECF No. 42. Equalia now seeks a nationwide preliminary injunction barring marketing and distribution of the allegedly infringing product. The patent issued as United States Design Patent No. D768,252 on October 4, 2016, and is titled Pitch-Propelled Vehicle. Mot for TRO, Bigler Decl. at ¶4.

The patent claims the ornamental design as depicted in five figures. The Court bases its conclusions on the images as depicted in the patent. The Court finds that the patent depicts the following distinct features,[1] among others:

1. An oblong-shaped board with rounded edges and upturned ends.
2. A slender single wheel in the center of the board, with two square-shaped bumper features with linear grooves on either side of the top of the wheel on the top of the board, and two angled plastic covers on either side of the bottom of the wheel.
3. A cover or dome on top of the wheel, conforming to the contour of the wheel.
4. A strip along the perimeter edge.
5. A thick edge, consisting of that strip, and thick planks of material on either side, with the thick planks sloping inward toward the strip at the edge.
6. Speakers on each end of the bottom of the board with a cone-shaped recess in the middle of the speakers containing a single light feature.
7. Triangular skid pads on each corner, with smaller round protruding shape features on each of them.
8. Dark, crescent-shaped displays on top front and back of the board.
9. Ten, diamond-shaped panels dividing up the top surface of the board.

Equalia now seeks an order restraining Defendants from offering the "Halo Board" products for sale in the United States.

---

[1] The Court has not altered these findings as applied in its order granting a temporary restraining order. While the Court now applies these findings to this order, it reiterates that they should not be interpreted as the Court's final construction as to the features in the design patent. The identification in this order does not constitute the law of the case and is not dispositive as to future constructions of the design patent by the Court.

### B. Evidentiary Hearings

The Court held an evidentiary hearing with expert testimony on January 3, 2017. The Court incorporates by reference its statements and findings made on the record at this hearing (and previous hearings). At the January 3 hearing, the Court heard expert testimony from Plaintiff's expert Robert Bigler and Defendants' expert Brian Sanderson, as to the functionality of the design features and overall design of the board. Mr. Bigler testified that he is the owner and CEO of Plaintiff Equalia LLC, that he designed the design patent, that he has a degree in mechanical engineering from San Jose state university, and that he has been involved in the creation and testing of the product bearing the design patent. Mr. Sanderson testified that he is trained as an industrial designer, that he has degrees in industrial design and visual art and oil painting from Brigham Young University, and that since acquiring his degrees he has worked in industrial design, including projects related to board sports. Based in part on that testimony, the Court issued its written order granting a temporary restraining order on January 11, 2017. ECF No. 43. The Court incorporates by reference and reaffirms its findings as to the testimony and exhibits received at the hearing on January 3, 2017.

The Court held a second evidentiary hearing to hear testimony and argument for and against the issuance of a preliminary injunction. Plaintiffs recalled Robert Bigler as an expert witness. Plaintiffs admitted exhibits including Mr. Bigler's expert report, and images depicting the "One Wheel" and "Jyro" products, presented as alternative designs for single-wheeled self-propelled boards. Defendants called Arthur Adreasyan as a lay witness. Andreasyan testified that he is the Managing Director and one-hundred percent owner of Kushgo, LLC, and had used and tested the Halo Board. Defendants admitted exhibits including video clips aimed at demonstrating the functional necessity of various features of the allegedly infringing product.

### III.   LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four

elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

To prove a likelihood of success on the merits in a case alleging patent infringement, the plaintiff "must show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) it will likely prove that [the Defendants infringe on the Plaintiffs'] patent and (2) its infringement claim will likely withstand [Defendants'] challenges to the validity and enforceability of the . . . patent." Genentech, Inc. v. Novo Nordisk A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997). Raising a "substantial question" as to "validity, enforceability, or infringement" defeats a request for a preliminary injunction based on patent infringement. Id.

The Ninth Circuit has also held that a preliminary injunction may issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011). According to this test, a plaintiff can obtain a preliminary injunction by showing "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1134-35 (citation omitted).

In considering a preliminary injunction alleging patent infringement, the precedent of the Federal Circuit applies to substantive issues within the domain of patent law. See Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446 (Fed Cir. 1988).

**IV.   DISCUSSION**

**A.  Likelihood of Success On The Merits**

The Court issued the temporary restraining order on January 4, 2017. Defendants presented testimony and arguments regarding a preliminary injunction at the hearing on January 13, 2016. Since the Court's restraining order, Defendants have not otherwise provided evidence or arguments as to the merits of Plaintiff's infringement claim. The Court incorporates by reference and reaffirms its findings of facts and conclusions of law as laid out in the written order issued on

- 4 -

January 11, 2016. As the Defendants have not provided sufficient grounds for the Court to reverse any of its findings, the Court finds that Plaintiffs are likely to succeed on the merits of their patent infringement claim. The Court makes the following additional findings.

Like Mr. Bigler, Mr. Andreasyan has a direct financial stake in the outcome of this litigation—he is a defendant and the owner and managing director of the other defendants. However, unlike Mr. Bigler, Mr. Andreasyan is a lay witness who claims no scientific expertise in design, and who played no role in the design or manufacture of either board. He testified based on his personal knowledge having marketed and ridden the allegedly infringing board. He testified that he had not ridden or tested the board embodying the plaintiff's design patent.

Mr. Andreasyan testified that the Defendants' board functions differently because it has "two adjoined wheels," establishing a wider grip with the ground and thus changing the maneuvering of the board. He also presented four short videos—produced by him since the date of the last hearing—aimed at the functionality inquiry. The Court admitted the videos as demonstrative exhibits to assist in its evaluation of Mr. Andreasyan's lay testimony as to his experience riding the boards. The first showed the board being ridden on inclines and sought to show the functionality of the upturned ends; the second showed how the board would appear to one looking directly down at the wheel cover, and sought to show how it would be unsafe to place the display in the center of the board; the third showed a rider making sharp turns, and sought to show that the placement of the wheel was dictated by maneuverability; and the fourth showed a person riding the board late at night, and sought to show that the center strip around the edge was necessary in order to provide 360 degrees of lighting for safety and in order to comply with California law.

The Court does not find Andreasyan's testimony as to the functionality or design of the boards to be credible or persuasive. While he may have used the boards, he did not demonstrate an understanding of the design or operation of all of the features of the boards. Indeed, he admitted that the board he and his company are selling was actually designed by another company. He and his company had no role in the design and testing of the board as it was developed. He had no knowledge of the patents in the area and had not done research with respect to the patents.

Defendants have not sufficiently rebutted Plaintiff's evidence demonstrating that the overall design is not dictated by function, but rather is one among many alternative designs. For example, an alternative design that would not implicate any of these features could include the following: a rectangular display screen; a wheel cover spanning the width of the board or no cover at all; squared edges at the four corners, placement of the speaker on top of the board; and a non-chamfered top edge. Plaintiffs also buttressed their claim that the patented design is not dictated by function by presenting additional evidence of alternative designs for self-propelled one-wheeled devices. Plaintiff's expert report depicts two such products, the "One Wheel" and "Jyro" devices. Both have a single, large, tire-like wheel spanning the width of the board, with short, flat, square footpads. The One Wheel device has an uncovered wheel and a row of LED lights on flat end. The Court finds that these designs bolster Plaintiff's claim that the overall design of the product is not dictated by function, even where the function is defined as a one-wheeled, self-propelled, balancing device with lighting.

Plaintiffs have provided some additional evidence to increase their likelihood of proving validity, while Defendants have not provided new credible evidence to disprove a likelihood of success on the merits. Defendants have also failed to provide additional prior art or any other evidence pertaining to novelty, obvious combinations of features, or other elements of the infringement standard. As such, the Court reaffirms its finding, as supplemented by the above analysis, that Plaintiffs have shown a likelihood of success on the merits of their patent infringement claim.

Defendants also argue orally (and through a motion which is not yet fully briefed) that they will show that the Court lacks jurisdiction, as the contacts with and activity in Nevada after the trade show are insufficient to maintain jurisdiction. The Court has reviewed Defendants' Motion to Dismiss for lack of jurisdiction. The Court is aware of no authority that would find that a district court loses jurisdiction if a defendant, after having unambiguously directed sufficient commercial activity into the forum state, subsequently withdraws that activity and pledges not to direct further activity into the forum. The Court finds that at the time of the filing of the Complaint, Plaintiffs had made credible allegations that Defendants had directed sales activity into the forum and had

directed marketing activity into the forum state with regard to the CES tradeshow. Defendants did not deny this activity at the evidentiary hearings in this case. The Defendants do not deny directly commercial activity in to the forum for the purpose of marketing and distributing their board. As defendants are not likely to succeed in demonstrating a lack of jurisdiction, at this time, the Motion does not alter the Courts finding of a likelihood of success on the merits. (The Court will rule on the Motion separately when it is fully briefed.)

### B. Irreparable Harm

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001). Plaintiff has not yet launched its product, and claims substantial investment in an initial launch that will play a significant role in its eventual market share and success. Defendants have advertised and sold the allegedly infringing product online, disrupting Plaintiff's ability to market and launch a novel product free from unlawful competition. Therefore, the Court finds that there would be irreparable harm absent a nationwide injunction barring marketing and sales of the allegedly infringing product.

### C. Balance of the Equities

While an injunction against Defendants would cause financial harm to defendants, allowing ongoing marketing and sales of the infringing product would harm Plaintiffs financially as well as reputationally, and deprive Plaintiffs of the full intangible benefit of advertising and promoting its launch without unlawful competition. Moreover, as pointed out by Plaintiffs, Defendants market similar products, and would not be shut out of the related business. Defendants do not present other compelling facts showing that if infringement has occurred, the balance would nonetheless tip in their favor. The Court finds that the balance of the equities tips sharply in favor of the Plaintiffs.

**D. Public Interest**

Although the public has an interest in competition, the patent laws express the preference, in cases of infringement, for temporary preferences in order to spur innovation. Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation. Indeed, the 'encouragement of investment-based risk is the fundamental purpose of the patent grant, and is based directly on the right to exclude.'"). Absent an interest other than the competing interests in free competition, public interest will not bar an injunction prohibiting the sale or advertising of an allegedly infringing product.

**V.   CONCLUSION**

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for a Preliminary Injunction, ECF Nos. 10, 42, is GRANTED, as follows:

Defendants Kushgo, LLC, Halo Board, LLC, and Arthur Andreasyan, as well as their officers, agents, servants, employees, attorneys, and any other persons in active concert or participation with them who receive actual notice of this order are PRELIMINARILY ENJOINED, for the duration of this litigation, from Displaying, Depicting, Advertising, Marketing, or Selling the Halo Board, or any substantially similar version thereof, online or in any physical location in Nevada or in any other place within the United States.  The Defendants may not fulfill any current orders for their product and must refund any money they have received for such orders to their customers.

**IT IS FURTHER ORDERED** that security which the Plaintiffs have proffered for the Temporary Restraining Order shall serve as the security for this Preliminary Injunction.  The Court will not require a further bond or additional security as the Court does not find one would be

required based upon likelihood of success on the merits.

**DATED** this 20th day of January, 2017.

                                                                                      _____

                                                                                      **RICHARD F. BOULWARE, II**
                                                                                       **UNITED STATES DISTRICT JUDGE**